[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff is forty-nine and the defendant is fifty-one. This is a thirty year marriage. Both are highly educated and extremely bright. The parties knew each other when she was fourteen and he was sixteen. She is a graduate of Queens College with a major in mathematics at age nineteen. She did graduate work at Pratt Institute. She married the defendant when she was nineteen and he was twenty-one. She became a computer programmer with New York Life Insurance when she completed school and worked there for eight years. The defendant also graduated at age nineteen from Queens College, cum laude, and was admitted to Phi Beta Kappa. He attended New York University School of Medicine and received the N.Y.U. Founders Day Award upon graduation. He interned in Pediatrics at Bronx Municipal Hospital for two years and did a two year Fellowship in Allergy and Clinical Immunology at Roosevelt Hospital. The parties resided in Mahopac, New York for four years before moving to Ridgefield in 1976. The defendant established a medical practice specializing in allergies in CT Page 3738 Danbury in August of 1976. The home in Mahopac that was purchased with the joint funds of the parties was sold and the net proceeds of $58,000 were used to purchase the marital home. The plaintiff basically arranged and prepared for the opening of her husband's practice by writing an operations manual and preparing the office's physical plant. She was his office manager for the first three years and did the accounts payable for his practice through 1989. She was paid $10,000 per year for her effort before taxes through 1989. She became very involved in the expansion of his practice. In 1983, she spent five months researching dust components and how they related to allergies. She also produced zippered mattress and pillow covers that would aid those who were allergic to dust. She established Allergy Controlled Products and worked out of the marital home from 1984 to 1987 filling orders and packing and shipping them to various vendees including allergists and their patients. During this time, she cared for the parties' two children and ran the household with little domestic help. She was a dedicated mother who nurtured her children in all aspects of their lives. She was the financial planner and manager for the household and her aspiring business. She basically made all of the financial decisions for herself, the defendant and the family and managed well. The plaintiff has a very high energy level and with her intellectual skills, has achieved a great deal of financial reward for herself and her family. The plaintiff was and is the sole stockholder of A.C.P. In 1988, she moved A. C. P. to 89 Danbury Road and, in 1989, expanded her product line to include respiratory products. She developed a catalogue and exhibited A. C. P.'s products at trade shows throughout the country. She expanded A. C. P.'s physical space to two additional locations in Ridgefield, and A. C. P. now fills at least 2000 orders a week and has sixty employees. She was responsible for the entire manufacture and distribution of products as well as all day-to-day operations. A. C. P. now sells throughout the United States and foreign nations. It would serve no purpose to detail the expansion of A. C. P., but the net effect of her commitment is a pending sale of A. C. P. for $6,000.000 cash. She is receiving a 10 percent interest in the new company but must agree to a one-year, non-compete agreement and is paying $600,000 for the same. She is taking a $150,000 reduction in annual salary.
The defendant who is a well respected and talented allergist in Danbury in partnership with two other allergists primarily conducted his medical practice, and except for some planning and research in the early phases of A. C. P., contributed little to CT Page 3739 A.C.P.'s physical operation and product distribution. He assisted in preparing medical aspects used in brochures that were used by A. C. P. and are still being utilized. There is nothing to indicate that plaintiff in any way encouraged his participation. The plaintiff testified that the marriage broke down primarily because of his obsessive behavior. The defendant candidly admits to being a perfectionist and committed to detail. Plaintiff testified that throughout the marriage he constantly berated and criticized her for matters relating to her posture, her speech, and how she moved her hands. He controlled how and when she could sleep, and he was obsessed with every detail of her life including when she showered. His conduct greatly affected his relationship with his children which has deteriorated to such a point that they refuse to interact with him. Plaintiff testified that he made unusual and harsh demands on herself and the children in areas involving diet, schooling, and all phases of their lives. The defendant engaged in marital counseling, and genuinely tried to make changes in his attempts to control his family, but the counseling produced little. He candidly admits that he does not know why his family rejects him. He understands the issues, but cannot arrive at a solution. Plaintiff testified that he always put himself first, his dance classes, his reading, his diet, both spiritual and physical needs, and could never understand or reach the feelings of his family. The breakdown of the marriage is the fault of the defendant.
The Court has carefully considered all of the statutory criteria set forth in §§ 46b-81 (c) and 46b-82 of the Connecticut General Statutes as it relates to assignment of property and alimony in making its orders.
 ORDERS
The court enters the following orders:
1. The marriage of the parties is dissolved.
2. Custody is agreed upon as per stipulation attached and shall be included in the judgment file.
3. The defendant shall pay to the plaintiff child support in the amount of $400 per week commencing one week from the date of judgment. If the minor is still in high school, support shall continue through graduation but not beyond the age of nineteen. CT Page 3740
4. Neither party shall pay alimony to the other.
5. The plaintiff shall transfer her interest in the real property located at 45 West 67th Street, New York, New York to the defendant and the defendant shall refinance the mortgage in his name alone. The defendant shall save plaintiff harmless from any claims that might arise as a result of the parties' joint ownership of same, more particularly, the mortgage having a balance of $47,780. Transfer is to occur no later than ninety days from the date of judgment herein.
6. The defendant shall transfer his interest in the Connecticut property at 28 High Ridge Avenue, Ridgefield to the plaintiff. The Court determines its value at $787,500. The plaintiff shall pay to defendant the sum of $267,250 to equalize the values of both the New York property and Ridgefield property based on their respective value of $300,000 and $787,500 less mortgages due and owing on same. The defendant shall save plaintiff harmless from any claims that might arise as a result of the parties' joint ownership of same. This payment shall be made at the time of defendant's refinance of the New York property, but in no event not less than ninety days from the date of the judgment herein.
7. The accounts set forth in Schedule (A) annexed hereto shall be equally divided. The Fidelity Magellan balance has increased by a deposit for a tax refund, and that increase in the account shall also be equally divided.
8. All personal property including plaintiff's 1996 BMW in the possession of the plaintiff shall remain hers except for the Dizzy Gillespie hologram, the defendant's art and natural science book, and the chair in the garage shall be the property of the defendant.
All personal property including defendant's 1995 BMW in the possession of the defendant shall remain his except as stated herein including the contents of the New York apartment.
9. The plaintiff shall provide medical insurance coverage for the minor child after the sale of her business. Until the sale, defendant shall continue to carry the minor child on his medical insurance policy. Defendant shall pay to the plaintiff one-half of the cost of medical insurance coverage. The parties shall CT Page 3741 equally share the payment of unreimbursed medical, dental (including orthodontia), psychiatric/physiological, prescriptive, and optical expenses incurred by the minor child after the plaintiff has submitted claims for services. The obligation for these expenses shall be payable during the same period of time as the child support.
10. The parties shall equally pay the attorney's fees of Attorney Mark Henderson in the amount of $3,659.52. This sum shall be paid within thirty days from entry of judgment herein.
11. Upon the sale of Allergy Control Products, Inc., plaintiff shall receive 75 percent of the net proceeds derived from the sale, and defendant shall receive 25 percent of the net proceeds.
12. The plaintiff shall consummate a sale of the assets of A. C. P., Inc. to Company W on terms substantially in accordance with a letter of intent dated January 11, 1999 from Company W to Carter, Morse Company as set forth on Exhibit A (which is sealed pursuant to court order).
The plaintiff shall authorize A. C. P.'s attorney to send copies to plaintiff's and defendant's attorneys, the investment bankers and each party's valuation experts of all documents prepared in connection with the sale of the assets of Allergy Control Products, Inc. to Company W including, but not limited to, copies of all employment contracts and stock option agreements concerning any Allergy Control Products' employees.
Plaintiff shall limit her withdrawals from Allergy Control Products to her current salary and shall not withdraw bonuses or other further compensation between now and the time of closing except those which are paid to her to cover the tax obligation of this S Corporation and normal tax deductible expense reimbursements related thereto.
All proceeds net of reasonable closing expenses and escrows from this transaction shall be held one-half in Vanguard Interim Term Treasury Bond Fund and one-half in the Fidelity Spartan Connecticut Mini-Bond Fund in the name of Attorney Ward J. Mazzucco, as trustee for Allergy Control Products, until further order of the Court. The trustee is authorized to pay any Federal and State tax obligations which are due and payable as a result of this transaction. The trustee shall pay to Company W the CT Page 3742 $400,000 to purchase the plaintiff's 10 percent minority interest in the new company. This sum shall be included in the plaintiff's percentage.
The parties agree that any accrued interest will be paid out in the same percentage. Attorney Mazzucco shall disburse the funds in accordance with the court order. All escrows shall be disbursed when released from escrow in the same percentages as may be assigned by the Court.
In the event the sale is not completed as anticipated, then the plaintiff shall continue in her efforts to sell the business and upon a sale, each party shall receive the percentages assigned by the Court. In the event the parties cannot agree with regard to the terms of another sale, the Court shall continue its jurisdiction over the sale of the business in order to effectuate its sale.
13. The parties agree that the fair market value of defendant's medical practice is $229,000. The defendant's medical practice shall remain his; however, its value shall be divided as follows: 20 percent to the plaintiff and 80 percent to the defendant.
14. The following three jointly held accounts with any interest or dividends thereon shall be divided equally between the parties.
 A. G. Edwards $ 73,386 Smith Barney (bonds) 121,797 Smith Barney (money market) 51,331 --------- $ 246,504
15. The defendant shall be responsible for one-half of the four-year college education expenses for both Andrew and Amy. The defendant shall pay one-half of the tuition, board, room, books and any other fees imposed by the institution. Said college education must be completed within five years of graduation from high school, and said obligation shall not extend beyond each child's twenty-fourth birthday. Each child must be a full-time student and maintain at least a "C+" average to be eligible for this contribution. Defendant shall not unreasonably withhold his approval of the choice of any appropriate educational institution, but plaintiff and children shall furnish to CT Page 3743 defendant all educational information.
16. Plaintiff has three accounts containing funds accumulated by her since the date of separation. She has been supporting the minor child and maintaining the household. The accounts are:
 Chase Savings Account $ 432,020 Chase Checking Account 66,207 Fleet Savings 5,053
The defendant has two accounts:
 Citibank Checking 10,758 Citibank Money Market 51,602 --------- $ 565,640
These accounts and any interest thereon shall be divided as follows: 75 percent to the plaintiff and 25 percent to the defendant.
17. Each party shall pay their own attorney's fees and any incidental costs of litigation.
Owens, J.
 SCHEDULE "A" Equal Division of the Following Assets: Wife Husband
(J) Silver Bars 150.00 150.00 (J) Fidelity Magellan 149,700.42 149,700.42 (J) Fidelity Spartan 75,326.77 75,326.77 (J)Fidelity MM 174,313.89 174,313.89 (J) T. Rowe Price 24,513.17 24,513.17 (J) Dreyfus 7,983.67 7,983.67 (J) Smith Barney 58,172.15 58,172.15 (J) 100 sh. Eastman Kodack @ 65./sh. 3,250.00 3,250.00 (J) Fleet ck. 2,213.88 2,213.88 (J) Gold/silver 50% 50% (W) IRA Dreyfus 3,709.55 3,709.55 (W) IRA Fleet 13,347.97 13,347.97 CT Page 3744 (W) IRA Allergy Asthma Assoc 2,500.00 2,500.00 (W) Smith Barney 3,261.09 3,261.09 (H) Lincoln National Life 13,537.77 13,537.77 (H) Mass. Mutual Life 18,904.22 18,904.22 (H) Profit Sharing 46,691.72 46,691.72 (H) IRA Fleet 13,634.09 13,634.09 (H) IRA Fleet 2,137.18 2137.18 (H) IRA Dreyfus 7,419.98 7,419.98 (H) Smith Barney 3,261.09 3,261.09 (H) IRA Fleet 2,646.31 2,646.31
Total 626,674.92 626,674.92